UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CONTRACT MANAGEMENT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:10-CV-110 |
| | ) | (PHILLIPS/SHIRLEY) |
| V. | ) | |
| | ) | |
| BABCOCK & WILCOX TECHNICAL | ) | |
| SERVICES Y-12, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the order of the District Judge [Doc. 44] referring Contract Management, Inc.'s Motion in Limine to Exclude Testimony of Debra Smith and DCAA Audit Report and for <u>Daubert</u> Hearing [Doc. 37] to the undersigned for disposition or report and recommendation as may be appropriate.

**I.    BACKGROUND**

Defendant Babcock & Wilcox Technical Services Y-12, LLC, solicited bids for construction work for "Portable Water Pipe Rehabilitation by Cleaning and Lining" at a government facility in Oak Ridge, Tennessee (the "Project"). The Plaintiff Contract Management, Inc., was awarded the Project by a Notice of Award dated December 15, 2008. [Doc. 1 at ¶ 6]. The parties entered into a subcontract (the "Subcontract") regarding completion of the Project. [Doc. 1 at ¶ 7]. Defendant later decided to decrease the scope of the work. [Doc. 1 at ¶¶ 10-12]. Defendant also allegedly reduced the bid on the Project. [Doc. 1 at ¶¶ 19, 24-25].

The Plaintiff contends that the Revised Subcontract Amount should be $2,023,338.74, but the Defendant listed the Amount as $1,703,467.41. The Plaintiff also maintains that the Defendant's amount does not account for the planning, "ramping up" and "ramping down," and other incidentals incurred as a result of changes to the contract. The Plaintiff filed this action for breach of contract, alleging $767,992.40 in damages on March 19, 2010. On April 30, 2011, the Defendant pled a counter-claim for breach of contract moving the Court to award damages of $830,804.00.

After this case was initiated, the Defense Contract Audit Agency ("DCAA") sent a notice to the Plaintiff on February 22, 2011, stating that it would be conducting an audit of the Project. The audit was to start the next day and the DCAA expected "to issue the report expressing an opinion on whether the claimed subcontract costs are acceptable as a basis for settlement on approximately April 29, 2011." [Doc. 37-2]. The audit report was, apparently, completed on December 29, 2011 instead. Debra M. Smith was the lead auditor for DCAA on the project.

In a letter dated January 9, 2012, John Burgin on behalf of the Defendant stated:

> In view of the Defense Contract Audit Agency report dated December 29, 2011, we will be adding Debra M. Smith, lead auditor, as a percipient witness. It is my understanding you have received a copy of the report from NNSA and have the contact information for Ms. Smith.
>
> We do not plan on presenting any testimony we believe qualifies as expert witness testimony. Like you have done, however, our witnesses will testify based upon their experience and their observations made during and after CMI's contract.

[Doc. 37-1 at 2].

In response to this letter, counsel for the Plaintiff filed the instant motion on February 7, 2012, moving the Court to exclude Ms. Smith from testifying and moving for the exclusion of the audit from evidence. The Defendant has responded in opposition to the motion [Doc. 47],

and the Plaintiff has made a reply in support of its position, [Doc. 43]. The Court heard oral arguments from the parties on March 21, 2012, and directed the parties to file supplemental briefs on or before March 28, 2012. The Court has received the parties' supplements and finds that the Plaintiff's motion is ripe for adjudication.

**II.     ANALYSIS**

The Plaintiff has offered a variety of arguments for excluding Ms. Smith from testifying in this matter and for excluding the results of her audit. The Court will address each of the arguments in turn.

**1.      The Audit Conducted by DCAA**

The audit conducted by DCAA is likely to underlie much of Ms. Smith's testimony, and therefore, the Court will address its admissibility prior to addressing the admissibility of Ms. Smith's testimony.

*A.      Federal Rule of Evidence 408*

The Plaintiff first argues that the audit was "prepared for a basis for settlement negotiations," and it should therefore be excluded from evidence under Rule 408 of the Federal Rules of Evidence, as "conduct or a statement made during compromise negotiations about the claim."

In support of this argument, the Plaintiff relies heavily on the DCAA audit initiation letter's statement that the DCAA had received a request from the Department of Energy for "an examination of Contract Management, Inc.'s subcontract equitable adjustment claim, for subcontract number 4300068376 submitted under subject subcontract and related to B&W Y12, LLC's prime contract number DE-AC05-000R22800, to determine if the claimed costs are

3

acceptable as a basis for settlement." [Doc. 37-2]. The Plaintiff emphasizes the final phrase, which uses the term "settlement." The Plaintiff contends that the use of this term makes "it clear that the audit report was to be prepared for a basis for settlement negotiations." [Doc. 38 at 9].

In its supplemental brief, the Plaintiff argues that Rule 408 has broad protection and is not limited to settlement offers. It directs the Court to Ramada Development Co. v. Rauch, 644 F.2d 1097 (5th Cir. 1981). In Ramada, the Court of Appeals for the Fifth Circuit held that the district court did not err in ruling that a study of building defects commissioned to function as the basis of settlement negotiations was inadmissible under Federal Rule of Evidence 408 because the report was a tool used in an unsuccessful settlement attempt. Id. at 1106. The Plaintiff notes that this decision was reaffirmed in Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637 (11th Cir. 1990).[1]

The Plaintiff also maintains that it was not required to give written notice to DCAA that it considered the audit to be for settlement purposes. [Doc. 52 at 4-6]. The Plaintiff argues that any right to an audit afforded to the Defendant under the Subcontract is irrelevant to the present inquiry, though the Plaintiff also argues that DCAA may be interpreted as having acted as the Defendant's agent. [Doc. 52 at 8-9].

The Defendant responds that the audit process was part of the terms and conditions of the Subcontract under which the Plaintiff performed their work on the Project. [Doc. 42]. The Defendant notes that as part of the equitable adjustment procedure allowed under the Subcontract the Plaintiff had to propose certified claims, which it argues are akin to the audit. The Defendant

---

[1] Ramada was binding precedent on the Court of Appeals for the Eleventh Circuit after the Fifth Circuit was split to form the Fifth Circuit and the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc).

4

maintains that the audit is no more an offer of compromise than are the Plaintiff's certified claims and notes that the Plaintiff has not moved to exclude the certified claims.

In its supplemental brief, the Defendant argues that a reasonable person would not have thought valuable consideration was being offered by DCAA in order to reach a compromise in this litigation. [Doc. 53 at 3]. The Defendant maintains that the Plaintiff was not asked to participate in the audit; it was instead obligated to participate in the audit and answer truthfully, see 18 U.S.C. § 1001(c)(1). [Doc. 53 at 4]. The Defendant argues that the Plaintiff could not have honestly thought the audit was an offer by the Defendant to engage in settlement discussions, because less than two months after the audit letter was sent, counsel for the Defendant noted in correspondence, "I would also like to discuss with you the possibility of engaging in mediation before we conduct depositions." [Doc. 53 at 8, Doc. 53-2 at 2]. Counsel for the Plaintiff turned this offer down noting that it did "not want to engage in mediation until it has received sufficient requested documentation and answers to interrogatories . . . ." [Doc. 53 at 9, Doc. 53-3 at 9].

Rule 408 of the Federal Rules of Evidence states:

> Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 804 (a).

The Defendant has focused a portion of their argument on Part (a)(1) of Rule 408, regarding an offer and acceptance. It does not appear to the Court that the Plaintiff intended to rely on this portion of Rule 408, and regardless, the Court finds that Part (a)(1) of Rule 408 could not be interpreted as rendering the audit inadmissible in this case. Thus, the issue before the Court is whether the audit is inadmissible pursuant to Part (a)(2) of Rule 408, which is to say: Is the audit offered either to prove or disprove the validity or amount of a disputed claim or to impeach? And is the audit evidence of "conduct or a statement" made during compromise negotiations about the claim?

Initially, the Court finds that the parties have not disputed the purpose for which the audit will be offered. Both parties have effectively conceded that it will be offered to prove or disprove the validity or amount of a disputed claim or to impeach, and the Court finds that this criterion is not at issue.

Turning to issue of whether the audit is evidence of conduct or statements made during compromise negotiations, the Court will assume, without so finding, that the audit is "conduct or a statement" or may be treated as a body of work consisting of conduct and statements, and therefore, turn its attention to the issue of whether the audit was made during compromise negotiations. For the reasons stated below, the Court finds that the audit was not made during compromise negotiations.

The Court would first note that the Court has found no case law to support the proposition that DCAA audits, despite what their introductory letters may say, are instruments of compromise negotiations *per se.* Neither party has cited the Court to any case law on this issue from within the Sixth Circuit, and with the exception of the Defendant's general citation to a case explaining the function of the DCAA, neither party has cited the Court to any case relating

6

to audits performed by the DCAA. DCAA audits do not appear to be rare occurrences, but Court's own research has revealed no cases in which a DCAA audit has been excluded from evidence based upon any part of Rule 408. The Plaintiff has not cited the Court to any case with this holding, and the Court's own research has yielded only cases in which DCAA audits were part of the evidence.

For example, in Orlosky Inc. v. United States, 68 Fed. Cl. 296 (Fed. Cir. 2005), the Court noted, "[I]t is the practice in this circuit to consider these audits only as evidence in determining damages." Id. at 317. The court in Orlosky further explained, "[W]hile the DCAA audit does not constitute an admission on the part of the Government, plaintiff may offer it as one piece of evidence and, as with any other proof, attempt to bolster it." Id. While this holding is not binding on this Court, it was decided by the Federal Circuit Court, which has exclusive appellate jurisdiction over decisions from the Court of Federal Claims, 28 U.S.C. § 1295(a)(3), a court that rules upon a large number of government contract cases each year, and it is entitled to appropriate weight.

The Court's research has not yielded other cases directly discussing the issue of admitting a DCAA audit, but the Court's research has yielded many cases weighing DCAA audits as part of the evidence without any indication of an audit being inadmissible under Rule 408. See, e.g., George Sollitt Const. Co. v. United States, 64 Fed. Cl. 229, 278-279 (Fed. Cl. 2005) (referencing the DCAA audit in determining overtime expenses, unilateral modifications, etc.); Design and Prod., Inc. v. United States, 18 Cl. Ct. 168, 210 (Cl. Ct. 1989) (admitting a DCAA audit into evidence based upon the parties' stipulation).

Accordingly, the Court finds that there is no evidence before the Court to support finding the DCAA audit is an instrument of compromise negotiations *per se*. The Court then turns to the

facts of this particular case to determine if the parties' actions made the audit "[e]vidence of . . . conduct or a statement made during compromise negotiations about the claim."

The Plaintiff has not demonstrated that the audit was evidence of "conduct or a statement made during compromise negotiations about the claim." The Court has considered the introductory letter from the DCAA and its statement that the audit was requested by the Department of Energy "to determine if the claimed costs are acceptable as a basis for settlement," but the Court finds that this statement alone cannot establish the existence of compromise negotiations for four reasons.

First, the letter states that the Department of Energy, not the Defendant, requested the audit. Second, the letter was from DCAA not the Defendant. The Plaintiff has not demonstrated that either the Department of Energy or the DCAA are agents of the Defendant for purposes of compromise negotiations. Further, the Plaintiff has not directed the Court to any letter or statement from the Defendant or its counsel that in any way indicated the audit was compromise negotiations or part of such negotiations. The Plaintiff's declining the offer indicates that the Plaintiff did not think of the ongoing audit process as settlement negotiations because it indicated that it was not ready for settlement negotiations. Finally, the audit procedure was provided for in the Subcontract, and thus, the Plaintiff's acquiescence to the audit was already legally required.

Based on the foregoing, the Court finds that Rule 408 of the Federal Rules of Evidence does not exclude the Defendant from presenting the audit performed by the DCAA at the trial of this matter. The Plaintiff's request in this regard will be **DENIED**.

B.  *Alleged Reliance on Irrelevant Regulations and Information*

The Plaintiff does not argue in their initial memorandum that the audit should be excluded because it relies on irrelevant regulations and information. [See Doc. 28 at 10]. At the

8

hearing and in its reply [Doc. 43 at 13-14], however, the Plaintiff argued that the audit should be excluded based upon its reliance on irrelevant regulations and information, and therefore, the Court has considered the point. The Plaintiff argues that the audit relies upon the Federal Acquisition Regulation ("FAR") and Department of Energy Acquisition Regulations ("DEAR") rather than the basic ordering agreements and the Subcontract as the basis for evaluation. At the hearing, the Defendant maintained that the FAR and DEAR were incorporated into the Subcontract as a business custom.

The undersigned finds that this issue of relevance is inextricably tied to the contract issues, including contract interpretation, that are to be decided by the District Judge during the bench trial of this matter. The issues raised by the Plaintiff relate largely to the weight to be afforded to the audit and not its admissibility. The Court cannot say that the audit should be excluded as a matter of law at this time, though the Court is also not prepared to state that the audit will come into evidence before the District Judge. The issue may be presented to the District Judge in a more precise and specific argument before a final decision.

Based upon the foregoing, the Plaintiff's request that rule that the undersigned rule that the audit may not be admitted at trial because it relies on irrelevant regulations and information will be **DENIED WITHOUT PREJUDICE**.

2.    **The Testimony of Debra Smith**

The Plaintiff moves the Court to rule that Debra Smith's testimony is inadmissible because: (1) it does not comply with the standards set forth in Rule 702 of the Federal Rules of Evidence and <u>Daubert v. Merrell Dow Pharmeceuticals, Inc.</u>, 509 U.S. 579 (1993), and (2) the

Defendant's disclosure of Ms. Smith as a witness did not comply with Rule 26 of the Federal Rules of Civil Procedure.

A.  *Rule 702 of the Federal Rules of Evidence and Daubert*

The Plaintiff notes that Ms. Smith was not involved in the performance of the Project and only became involved in review of the Plaintiff's claims approximately fifteen months after the Plaintiff had completed its work at the Project. [Doc. 38 at 4-5]. The Plaintiff argues that, because she was not a witness to the Project's completion, she cannot give factual testimony under Rule 701 of the Federal Rules of Evidence and will instead be providing testimony under Rule 702 of the Federal Rules of Evidence. The Plaintiff supports this position with a blanket assertion that a "person who is allowed to testify based upon experience as an account is a person who falls within rule 702 of the Federal Rules of Evidence . . . ." [Doc. 38 at 5].

The Plaintiff also argues that Ms. Smith should be precluded from testifying because she has not demonstrated her "knowledge, skill, experience, training, or education" through disclosure of curriculum vitae, resume, or other statement of qualifications. The Plaintiff argues that Ms. Smith has not demonstrated qualifications that qualify her to testify as an expert pursuant to Daubert v. Merrell Dow Pharmeceuticals, Inc., 509 U.S. 579 (1993). [Doc. 38 at 10-12].

The Defendant responds, first, that the Plaintiff has failed to establish that Ms. Smith, would necessarily present expert testimony. [Doc. 42 at 1-2]. The Defendant maintains that it is not uncommon for actual costs of a project to be ascertained after a project is over, and participation in post-project review does not render a witness's testimony to be expert testimony. The Defendant also refers the Court to the DCAA's internal regulations which classify the persons who perform audits as witnesses of fact and persons who testify generally about costs as expert witnesses. [Doc. 42 at 2]. The Defendant cites the Court to United States v. Rigas, 490

10

F.3d 208, 224 (2d Cir. 2007), wherein the court of appeals noted that a "witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise . . . .'" Id. (quoting Bank of China v. NBM LLC, 359 F.3d 171, 183 (2d Cir. 2004)).

The Defendant also argues that Daubert motions are "largely irrelevant in the context of a bench trial." [Doc. 42 at 8 (citing Deal v. Hamilton County Bd. of Educ., 392 F.3d 840, 851 n. 6 (6th Cir. 2004))].

A witness may give two types of opinion testimony: lay opinion testimony, which is discussed in Rule 701 of the Federal Rules of Civil Procedure, and expert opinion testimony, which is discussed in Rule 702 of the Federal Rules of Civil Procedure. Rule 701 states that if a witness is not testifying as an expert, his or her testimony, in the form of an opinion, must be: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Rule 702 states that a witness who is otherwise qualified as an expert by "knowledge, skill, experience, training, or education" may testify in the form of an opinion if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The Court of Appeals for the Sixth Circuit has explained these distinctions by stating, "Lay testimony 'results from a process of reasoning familiar in everyday life, whereas an

expert's testimony results from a process of reasoning which can be mastered only by specialists in the field.'" United States v. Faulkenberry, 614 F.3d 573, 588 (6th Cir. 2010) (quoting United States v. White, 492 F.3d 380, 401 (6th Cir. 2007)).

With this law in mind, the Court has tried to consider Ms. Smith's testimony.[2] The Court finds the description of Ms. Smith's testimony as regarding her own personal observations and basic financial reasoning known to everyday persons is either fact testimony or lay opinion testimony given pursuant to Rule 701. On the other hand, the Court finds that her testimony as to whether practices, actions, or facts she may have observed are "reasonable" or "allowable," based on her specialized knowledge as an accountant and as a person with potentially special knowledge of government contracting, is expert testimony give pursuant to Rule 702.

At the hearing, counsel for the Defendant stated that Ms. Smith "can't and won't" give the expert testimony described above. He specifically agreed that Ms. Smith could not and would not give testimony as to whether facts from or actions by the Plaintiff were "reasonable" or "allowable." Based on this agreement, the Court finds no reason to exclude Ms. Smith's testimony to the extent it is limited to lay testimony regarding her own personal observations and basic financial reasoning.

The standards outlined in Daubert apply to expert testimony given pursuant to Rule 702. The Defendant has agreed that in this case Ms. Smith will not give such testimony, and therefore, the Court finds that the Plaintiff's objections based upon Daubert are moot. They are **DENIED AS MOOT**. Should Ms. Smith exceed the bounds of her Rule 701 testimony, the Plaintiff may renew these objections to the Honorable Thomas W. Phillips, United States District Judge, at the

---

[2] The Court has not been provided a deposition of Ms. Smith, a summary of her testimony, or even the 57-page audit relating to her testimony. Thus, the Court is at a true disadvantage in considering the admissibility of testimony that has only been described to the Court generally.

12

bench trial to begin on May 8, 2012, and bring the agreement made before the undersigned to Judge Phillips's attention.

B.  *Rule 26 of the Federal Rules of Civil Procedure*

Finally, the Plaintiff argues that the Court should exclude Ms. Smith's testimony because the Defendant has not complied with its obligation to disclose Ms. Smith's testimony under Rule 26(a)(2) of the Federal Rules of Civil Procedure. Because the Defendant has agreed that Ms. Smith will not offer expert testimony under Rule 702, the Court finds that this request is moot, and it is **DENIED AS MOOT**.

III.  **CONCLUSION**

In sum, the Plaintiff's Motion in Limine to Exclude Testimony of Debra Smith and DCAA Audit Report and for Daubert Hearing **[Doc. 37]** is **DENIED**, both with and without prejudice, as follows:

1. The Plaintiff's request for exclusion of the DCAA audit, pursuant to Rule 408 of the Federal Rules of Evidence, is **DENIED WITH PREJUDICE**;

2. The Plaintiff's request that the audit be excluded based upon its alleged reliance on irrelevant regulations and information is **DENIED WITHOUT PREJUDICE;**

3. Counsel for the Defendant has agreed that Ms. Smith will not give testimony as to whether facts from or actions by the Plaintiff were "reasonable" or "allowable." Based on this agreement, the Court **ORDERS** that Ms. Smith's testimony be **LIMITED** to lay testimony regarding her own personal observations and basic financial reasoning provided under Rule 701;

4. Because the Defendant has agreed that in this case Ms. Smith will not give testimony that the Court finds would be governed by Rule 702, the Court finds that the Plaintiff's objections based upon Daubert are moot, and they are **DENIED AS MOOT**; and

5. Finally, the Court finds that based upon the Defendant's agreement, the Plaintiff's requests for exclusion based upon the Defendant's failure to comply with Rule 26 are moot, and they are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

ENTER:

　s/ C. Clifford Shirley, Jr.
United States Magistrate Judge