IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF TENNESSEE AT KNOXVILLE

| | |
|---|---|
| CONTRACT MANAGEMENT, INC., <br><br> Plaintiff, <br><br> vs. <br><br> BABCOCK & WILSON TECHNICAL SERVICES Y-12, LLC, <br><br> Defendant. | ORDER DENYING DEFENDANT'S MOTION TO ALTER OR AMEND <br><br><br> Case No. 3:10-cv-110 |

Defendant Babcock & Wilson Technical Services Y-12, LLC (B&W Y-12) moves the court to alter or amend its Findings of Fact and Conclusions of Law issued on January 4, 2013, under either Rule 59(a)(2) or Rule 52(b) of the Federal Rules of Civil Procedure. For the following reasons, the court declines to do so.

As B&W Y-12 points out, a district court may grant a motion to alter or amend judgment only if there is: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." Henderson v. Walled Lake Consol. Schools, 469 F.3d 479, 496 (6th Cir. 2006). B&W Y-12 has failed to demonstrate that the court should reconsider its judgment under any of these four requirements.

B&W Y-12 bases its motion on the court's discussion of how the provisions of the Basic Ordering Agreement (BOA) affect the provisions of the General Terms and Conditions that were agreed upon by B&W Y-12 and by Plaintiff Contract Management, Inc. (CMI). B&W Y-12

argues that the court failed to consider a limitation on percentages for overhead that is contained in Section 49(c) of the General Terms and Conditions and that the court should adjust the award granted to CMI accordingly.  B&W Y-12 apparently takes the position that because it originally failed to brief an argument about profit reduction that the court found was mandated by the plain language of Section 48 of the General Terms and Conditions, it should now have a chance to brief an additional argument about reduction for overhead costs.  But the court has already considered B&W Y-12's position and found it to be unpersuasive.

The court spent considerable time analyzing the complex interplay of the numerous documents that were incorporated into the Subcontract signed by the two parties, including the BOA and the General Terms and Conditions.  As the court discussed at length in its Findings of Fact and Conclusions of Law, Section 49 of the General Terms and Conditions provides support for CMI's theory that the proper method for calculating an equitable adjustment under the Subcontract is to provide B&W Y-12 a credit for the manual labor and materials associated with the four deleted water lines, and then to add back to this amount costs for CMI's subcontractor, its extended management costs, and the increase in the Construction Labor Agreement (CLA) rates.  But the court found that the BOA, not Section 49, provided the appropriate rates for pricing the amount of the credit owed B&W Y-12 as well as the additional management costs.

Under Section 49, equitable adjustments are priced by calculating the change in direct costs, with adjustments allowed for overhead and profit.  As B&W Y-12 points out, these allowances for overhead and profit are negotiable, but may not exceed ten percent.  (Ex. 2 ¶ 49(c).)  B&W Y-12 now argues that the court should apply this ten percent cap on overhead to the BOA rates, which allow for overhead at twenty-five percent.  But the court specifically

2

rejected this approach to pricing the equitable adjustment and held that "despite [the] language in Section 49, a number of other reasons demonstrate that the BOA rates should be used to calculate both decreases and increases to the Subcontract price." (Findings of Fact and Conclusions of Law, at 54, Dkt. No. 101.) First, the court found that the BOA rates took precedence over conflicting provisions in the General Terms and Conditions because of language in the Subcontract stating that "in the event of a conflict between BOA provisions and the provisions of this subcontract, the provisions of the BOA will prevail." (Ex. 1 ¶ G.1.) More importantly, the court found that the parties themselves rejected the use of the Section 49 approach in favor of using the BOA rates when calculating changes to the Subcontract price. (See Findings of Fact and Conclusions of Law, at 55 (citing examples of B&W Y-12's use of the BOA rates to calculate increases and decreases to the Subcontract price).) The court notes that, even now, B&W Y-12 continues to accept the use of the BOA rates to price the credit of $591,492.74 that it is owed by CMI for the four deleted water lines under Modification No. 1. (See id., at 54.) Conspicuously absent from B&W Y-12's Motion to Amend is the suggestion that the court should also reduce this credit to account for the difference between the ten percent cap on overhead in Section 49(c) and the twenty-five percent overhead cost in the BOA rates.

If the court were to adopt B&W Y-12's approach, it would reach a much different result than B&W Y-12 suggests. First, the court notes that B&W Y-12 has not applied its method consistently. B&W Y-12 argues that the court should administer an additional reduction in three places: to its award under Modification No. 1, to its award of additional management costs under Modification No. 4, and to its award of additional labor costs under Modification No. 4. For the latter two adjustments, B&W Y-12 divides the court's award by 1.25 to reduce the award by the

3

twenty-five percent overhead charge contained in the BOA rates. B&W Y-12 then multiplies the remaining amount by 1.1 to account for the allowable overhead costs under Section 49(c).[1] This approach is the one the court would choose. But to calculate the reduction under Modification No. 1, B&W Y-12 simply divides the court's award (after subtracting out amounts for CMI's subcontractor and for the increased CLA rates) by 1.15, thereby decreasing the court's award by fifteen percent.[2] These methods are not equivalent, and reducing an award by fifteen percent is not the same as substituting a ten percent overhead cost for a twenty-five percent cost.[3]

The court is more concerned with a second problem that B&W Y-12 makes in its calculation under Modification No. 1. The $203,694.91 figure which B&W Y-12 incorrectly reduces by fifteen percent does not consist primarily of additional management costs owed to CMI, which would be calculated using BOA rates and therefore subject to modification under B&W Y-12's theory. Instead, the bulk of the award is owed to CMI because the court found that B&W Y-12 used an inappropriate method to reduce the Subcontract price when B&W Y-12 removed four water lines from the scope of the Project. (Findings of Fact and Conclusions of Law, at 48-53.) Even if the court accepted B&W Y-12's theory about the overhead costs, it would only apply this reduction to the $26,083.02 in additional management costs that the court awarded to CMI, which were calculated using the BOA rates. (Id., at 53.)

B&W Y-12's argument is actually counterproductive to its own interest. As the court

---

[1]In other words, $146,315.20 ÷ 1.25 x 1.1 = $128,757.38 and $114,788.03 ÷ 1.25 x 1.1 = $101,013.47. (See Def.'s Mem., at 6, Dkt. No. 103.)

[2]In other words, $203,694.91 ÷ 1.15 = $177,126.01. (See Def.'s Mem., at 6.)

[3]Using the same method that B&W Y-12 used for its other calculations would reduce the court's award of $203,694.91 to $179,251.52, not $177,126.01.

noted above, B&W Y-12 has not argued that the $591,492.74 credit owed by CMI should be adjusted to account for any overhead costs, even though a substantial portion of this credit is based on BOA rates.[4] But Section 49 clearly applies to both increases and decreases in the Subcontract price. As a result, B&W Y-12's logic would dictate that the court reduce the amount of credits that B&W Y-12 received for the deleted scope of the Project to account for the ten percent cap on overhead in Section 49(c). The court calculates the revisions for Modification No. 1 as follows:

|  | Original | Revised |
|---|---|---|
| Credits for deleted lines | -$591,492.74 | **-$520,513.61** |
| UGSI's costs incurred in connection with the deleted lines | $97,365.26 | $97,365.26 |
| Extended management costs | $26,083.02 | **$22,953.06** |
| Increase in the CLA rates | $2,087.69 | $2,087.69 |
| Total of above items | -$465,956.77 | **-$398,107.60** |

Because B&W Y-12 deducted $769,104.63 instead of $398,107.60, the court would award CMI $370,997.03 under B&W Y-12's theory instead of the $303,147.86 that the court actually awarded CMI. With the increased interest of $28,481.65 on this amount, CMI's revised total award using B&W Y-12's argument and applying B&W Y-12's results for Modification No. 4 would be $656,908.96, not $617,765.36. The court is doubtful that B&W Y-12 would be happy

---

[4]The parties did not focus on the exact calculations that were used to calculate this credit since B&W Y-12 did not dispute the total amount of $591,492.74. But part of this figure was clearly subject to the BOA rates, since Penny Wiseman, B&W Y-12's Subcontract Administrator, sent a sharply worded email instructing CMI to use the BOA rates to price the credits. (Tr. 468 (Bowden).) While this figure may also comprise a number of other costs that were not subject to the BOA rates, the court assumes for the purposes of its argument above that the entire amount was calculated using the BOA rates.

with this result.

While it is somewhat tempting to grant CMI this boon given the extra judicial resources required to address B&W Y-12's motion, the court declines to do so because it does not believe that the Subcontract requires the overhead rate to be capped at ten percent.[5] As discussed above, the court held in its Findings of Fact and Conclusions of Law that the BOA rates took precedence over the pricing method described by Section 49 for a number of reasons. Implied in the court's decision is the holding that the cap on profit and overhead in Section 49(c) is inapplicable when the BOA rates are used to calculate an equitable adjustment. But the court sees no reason why the BOA provisions also must be viewed as conflicting with Section 48 of the General Terms and Conditions, which sets forth a specific prohibition against profit on equitable adjustments for delay costs. In its judgment, the court simply reduced the part of CMI's award that was based on delays by the approximately ten percent profit return that CMI testified was included in the BOA rates. (Tr. 528-29 (Williams).)

In its briefing on its Motion to Amend, B&W Y-12 asserts that CMI's request for an equitable adjustment is expressly governed by Section 49. (Def.'s Reply Mem., at 3, Dkt. No. 112.) The court disagrees with B&W Y-12. CMI's right to an equitable adjustment is required by Section 45 of the General Terms and Conditions. Section 49 merely provides guidance to the

---

[5]The court also finds that it would be inequitable to hold as uncontroverted its assumption that the entire $591,492.71 figure was based on BOA rates and therefore subject to revision. But even if only half of this amount represented costs based on the BOA provisions, the net result of capping at ten percent the overhead costs included in the BOA rates would likely be a result very similar to the $617,765.36 award the court has already granted. Any reduction in liability allowed to B&W Y-12 under such a holding for the amount it owes for Modification No. 4 would be canceled or even exceeded by the additional award that CMI would receive for Modification No. 1.

6

court about how the parties agreed to calculate and price such an equitable adjustment. The BOA provides additional guidance. In its Findings of Fact and Conclusions of Law, the court attempted to find the most harmonious interpretation of the Subcontract that was possible. Given the express preemption language in the BOA, the course of dealing between the parties, and the fact that neither of the parties submitted any evidence that would have allowed the court to follow Section 49's direction to price the equitable adjustments under Modification No. 1 and Modification No. 4 using direct costs plus an allowance for overhead and profit of up to ten percent, the court held that while Section 49 provided some support for the method of using credits and increased costs to calculate an equitable adjustment, it was the BOA rates that the parties used to actually price those credits and increased costs. Since B&W Y-12 has not objected to including allowances for profit and overhead in the credits it is owed by CMI, it cannot now object to including the agreed-upon allowance for overhead in the increased costs of the Project. The court also notes that while it is equitable and reasonable for the Subcontract to disallow CMI to recover profit on any adjustments caused by delay costs, the same policy rationale is much weaker when applied to overhead costs, which will still be incurred if the duration of a project is increased.

Finally, the court notes an important additional reason why it denies B&W Y-12's motion. In order to reach an equitable result in this complex dispute, the court reviewed over one thousand pages of trial transcript and over five hundred exhibits. As the court previously noted in its Findings of Fact and Conclusions of Law, this case required the court to make a number of equitable estimates on a wide variety of matters. While the court endeavored to determine a just outcome for each of the smaller and more particularized issues that were presented during the

trial, the court also viewed the dispute from a global perspective and was careful to ensure that its final judgment reflected the court's general view of the proper disposition of the case based on the totality of testimony and evidence that the court received.  The court achieved this result by carefully balancing estimates that in some instances favored CMI with estimates that in other instances favored B&W Y-12 as the equities of the case dictated.  The court is disinclined to disturb this careful equilibrium by analyzing one particular issue in isolation.  Even if the court had indeed overlooked B&W Y-12's argument about a cap on the overhead allowance, the court would first re-examine a number of other issues in the case that presented a close question before amending its judgment as it related to just one contention.  Happily, the court does not need to perform this global reevaluation of its previous ruling because it has already considered B&W Y-12's argument and found that it is unpersuasive.

For the reasons discussed above, the court DENIES B&W Y-12's Motion to Alter or Amend the Court's Judgment (Dkt. No. 102).

SO ORDERED this 7th day of March, 2012.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge